STATE of Minnesota, Respondent,

v.

Jerry P. CHASE, Appellant.

No. 81–481.

Supreme Court of Minnesota.

Aug. 31, 1982.

Dingle, Suk, Wendland & Walters and Charles James Suk, Rochester, for appellant.

Warren Spannaus, Atty. Gen., and Gary Hansen, Sp. Asst. Atty. Gen., St. Paul, DeWayne P. Mattson, County Atty., Rochester, for respondent.

AMDAHL, Chief Justice.

Defendant was found guilty by a district court jury of theft of over $2,500, Minn. Stat. § 609.52, subds. 2(4), 3(1) (1980). The trial court stayed imposition of sentence and placed defendant on probation for 5

years, with the first 6 months in the workhouse. The trial court also ordered restitution. The court freed defendant from the workhouse pending appeal after defendant executed an agreement placing a lien against his real estate in an amount sufficient to satisfy the amount of restitution ordered. The sole issue on this appeal is whether there was sufficient evidence identifying defendant as the thief. We believe that there was, and we affirm.

Defendant was the manager of the company that operates the bus and limousine service between downtown Rochester and the Rochester airport. In April of 1980 when defendant was on vacation his assistant discovered the thefts which occurred on an almost daily basis between December of 1979 and April of 1980.

The number of busdrivers varied from day to day depending on the volume of air traffic, with the low number being two and the high number being five. Each driver would turn in his receipts for the day and a sheet with his hours stamped on it and the number of fares written on it. He would put the receipts and this sheet in a bag and deposit the bag in a locked hamper. The next day defendant would take the bags out of the hamper and make sure that each driver's hours were transferred to a ledger, so that the driver would be paid for the number of hours worked. Defendant then was to return the bags to the hamper or to the cashier, who would deposit the receipts after adding the money in each bag and making sure that it balanced with the figure obtained by multiplying the number of fares reported by the driver by the flat amount charged for each fare.

When the thefts were finally discovered it was determined that, almost on a daily basis, someone had been taking all the receipts from one or another of the bags along with the driver's trip sheet. This occurred after the driver had been credited with working the appropriate number of hours. The cashiers, who were inexperienced, apparently never caught onto the fact that the number of bags on any given day generally did not match the number of drivers who had worked the previous day.

The state's theory that defendant committed the thefts was based on (a) the evidence that the thefts occurred after defendant got the bags from the hamper; (b) the evidence that defendant was literally on the job 7 days a week; (c) the testimony of others who had access to the hamper that they did not take the money; (d) the evidence that the others with access to the bags would have had a hard time stealing such a large number of bags over such a long period of time without being seen and getting caught because they did not have private offices as defendant did; (e) the evidence that defendant promoted the employees who would have been likely to catch on to his scheme and hired inexperienced people to replace them; (f) the evidence that defendant, who claimed a net worth of $300,000 to $400,000, had cash flow problems during the time in question; and (g) the evidence that, when confronted by the owner with the shortages and the evidence against him, defendant said that he was innocent but agreed that everything pointed toward his guilt.

If the jury believed the state's witnesses, and we must presume that it did, then the evidence of defendant's guilt was sufficient.

Affirmed.